**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

WILLIAM ISIAH JOHNSON,

    Plaintiff,

v.                                            Case No: 3:18-cv-1042-J-32JRK

JOSEPH S. TROWELL, et al.,

    Defendants.

_____

## ORDER

**I.**    **Status**

Plaintiff, an inmate of the Florida penal system, filed a Civil Rights Complaint (Doc. 1; Complaint) against four Defendants: Officer Joseph S. Trowell; Sergeant M. White; Officer A. Pierrce; and Nurse Stroma. Plaintiff alleges that Defendants Trowell, White, and Pierrce used excessive force on him in violation of the Eighth Amendment; and that Defendant Stroma was deliberately indifferent to Plaintiff's serious medical needs in violation of the Eighth Amendment by failing to treat Plaintiff's serious injuries following the use of excessive force. See generally Doc. 1.

Before the Court is Defendant Stroma's Motion to Dismiss (Doc. 22; Motion).[1] The Court advised Plaintiff that the granting of a motion to dismiss would be an adjudication of the claim and could foreclose any subsequent litigation of the matter

---

[1] Defendants Pierrce, Trowell, and White filed an Answer. See Doc. 13.

and provided Plaintiff with an opportunity to respond. Plaintiff filed a Response (Doc 24; Response). Accordingly, the Motion is ripe for the Court's review.

## II. Complaint Allegations

Plaintiff describes an instance of excessive force that occurred at the Reception and Medical Center on April 9, 2018. Doc. 1 at 3-6. He alleges that Defendants Trowell, White, and Pierrce punched and kicked him in the face and mouth before spraying him with chemical agents. Id. As a result of the use-of-force incident, Plaintiff asserts that he suffered severe swelling to the left side of his jaw and face; a deep laceration to the inside of his bottom lip; and back, jaw, and head pain. Id. at 7. Defendant Stroma did not participate in the use of force.

Following the use-of-force incident, Plaintiff took a decontamination shower and was escorted to the medical room to be evaluated by Defendant Stroma. Id. at 6. According to Plaintiff,

> Defendant Stroma refused to document Plaintiff's injuries or refer Plaintiff for treatment for pain, swelling to the face as well as laceration and bleeding to lip. Plaintiff continuously advised Defendant Stroma that he was in pain and bleeding and that Plaintiff was dizzy but Defendant Stroma refused to do anything for the Plaintiff.

Doc. 1 at 6-7. Plaintiff states that the next day, April 10, 2018, he was transferred to Hamilton Correctional Institution where nurses inquired about Plaintiff's obvious facial injuries. Id. at 7. He contends that Nurse Fuller then reviewed Plaintiff's medical records and examined him, during which she noted that there were no prior medical notes regarding Plaintiff's injuries or whether Plaintiff received medical treatment following the use of force. Id. Medical staff at Hamilton C.I. then provided

2

Plaintiff with medication to reduce the swelling in his jaw and took him to the dental office to be examined. Id. at 7-8. According to Plaintiff, because the dentist believed that Plaintiff's jaw may have been broken, Plaintiff was transferred back to R.M.C. that night for medical treatment. Id. at 8. Plaintiff maintains that days later, medical staff at R.M.C. glued the laceration on Plaintiff's lip and took x-rays of Plaintiff's jaw. Id. Plaintiff argues that it took approximately two-and-one-half weeks for his jaw and lip to heal, though he still has a permanent bump on the inside of his lip. Id.

Plaintiff argues that Defendant Stroma was deliberately indifferent to his serious medical needs by failing and refusing to treat Plaintiff's serious injuries and by refusing to refer him to a medical doctor or a dentist to examine his serious lip and jaw injury at the time she conducted the initial medical evaluation. Id. at 10. He sues Defendant Stroma in her individual capacity and requests compensatory damages in the amount of $50,000 against each Defendant; punitive damages in the amount of $100,000 against each Defendant; and any additional relief that the Court deems just and proper. Id. at 10-11.

### III. Defendant Stroma's Motion and Analysis

Defendant Stroma requests dismissal of the Complaint with prejudice. She raises the following arguments in support of her request for dismissal: (A) Plaintiff failed to exhaust his administrative remedies; (B) Plaintiff fails to state a claim upon which relief may be granted; (C) she is entitled to qualified immunity; and (D) she is entitled to Eleventh Amendment immunity. See generally Doc. 22.

### A. Exhaustion

The Prison Litigation Reform Act (PLRA) requires exhaustion of available administrative remedies before a 42 U.S.C. § 1983 action with respect to prison conditions may be initiated in a district court by a prisoner. See 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted."); see also Woodford v. Ngo, 548 U.S. 81, 92-93 (2006) (noting that a prisoner must exhaust administrative remedies before challenging the conditions of confinement, and concluding that the PLRA demands "proper exhaustion"). Nevertheless, prisoners are not required to "specially plead or demonstrate exhaustion in their complaints." See Jones v. Bock, 549 U.S. 199, 216 (2007). Instead, the United States Supreme Court has recognized that "failure to exhaust is an affirmative defense under the PLRA[.]" Id.

Importantly, exhaustion of available administrative remedies is "a precondition to an adjudication on the merits." Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). See also Jones, 549 U.S. at 211. The Supreme Court has instructed that while "the PLRA exhaustion requirement is not jurisdictional[,]" Woodford, 548 U.S. at 101, "exhaustion is mandatory . . . and unexhausted claims cannot be brought," Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017) (per curiam) (citing Jones, 549 U.S. at 211). Not only is there a recognized exhaustion requirement, "the PLRA . . . requires proper exhaustion" as set forth in applicable administrative rules and policies of the institution. Woodford, 548 U.S. at 93.

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)."

Id. at 90 (citation omitted). Indeed, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]" Id.

Because failure to exhaust administrative remedies is an affirmative defense, the defendant bears "the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." Turner, 541 F.3d at 1082. The Eleventh Circuit has articulated a two-step process that district courts must employ when examining the issue of exhaustion of administrative remedies.

> In Turner v. Burnside we established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust. 541 F.3d at 1082. First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. Id. Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. Id. at 1082–83; see also id. at 1082 (explaining that defendants bear the burden of showing a failure to exhaust).

Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1209 (11th Cir. 2015).

The FDOC provides inmates with a three-step grievance process for exhausting administrative remedies. As the Eleventh Circuit has described it:

5

> The grievance procedure applicable to Florida prisoners is set out in § 33-103 of the Florida Administrative Code. Section 33-103 contemplates a three-step sequential grievance procedure: (1) informal grievance; (2) formal grievance; and then (3) administrative appeal. Dimanche, 783 F.3d at 1211. Informal grievances are handled by the staff member responsible for the particular area of the problem at the institution; formal grievances are handled by the warden of the institution; and administrative appeals are handled by the Office of the Secretary of the FDOC. See Fla. Admin. Code. §§ 33-103.005–103.007. To exhaust these remedies, prisoners ordinarily must complete these steps in order and within the time limits set forth in § 33-103.011, and must either receive a response or wait a certain period of time before proceeding to the next step. See id. § 33-103.011(4).

Pavao, 679 F. App'x at 824.

Here, Defendant Stroma argues that Plaintiff did not exhaust his administrative remedies because he failed to complete the administrative grievance process. Doc. 22 at 4-5. Defendant Stroma notes that Plaintiff timely filed an informal grievance regarding her alleged inadequate medical care, and she attaches a copy of the informal grievance and the FDOC's denial of the informal grievance as the only exhibit to her Motion. Id.; Doc. 22-1. However, Defendant Stroma alleges that after Plaintiff received the denial of his informal grievance, "he failed to appeal the informal grievance, as required by the DOC rules and regulations." Id. at 5.

In response, Plaintiff argues that he did exhaust his administrative remedies regarding Defendant Stroma's failure to provide adequate medical care. Doc. 24 at 2. In support of this contention, Plaintiff alleges that he filed an informal grievance on April 11, 2018; the FDOC denied the informal grievance on April 20, 2018; and then he filed a formal grievance with the warden on May 2, 2018. Id. Plaintiff asserts that

6

the warden responded to the formal grievance on May 23, 2018, by approving the formal grievance "to the point of sending the issue to the Inspector General for appropriate action." Id. According to Plaintiff, once the FDOC approved his formal grievance, he "exhausted all available administrative remedies . . . ." Id. at 4.

Accepting Plaintiff's view of the facts as true, the Court finds dismissal of the claim against Defendant Stroma for lack of exhaustion is not warranted at the first step of Turner. Thus, the Court proceeds to the second step of the two-part process where the Court considers Defendant Stroma's arguments regarding exhaustion and makes findings of fact.

The Court notes that Plaintiff attaches a copy of a formal grievance to his Response and recognizes that this attached formal grievance does not refer to the claim against Defendant Stroma, but instead only pertains to the allegations of excessive force against Defendants Trowell, White, and Pierrce. See Doc. 24-1 at 3. Nevertheless, the "Table of Contents" for the Response's exhibits references two formal grievances: (1) the attached formal grievance regarding the use of excessive force (log #1805-209-029), and (2) a formal grievance that is omitted from the provided exhibits (log #18-6-20727). See Doc. 24-1 at 1. Although not entirely clear, Plaintiff appears to argue that the omitted formal grievance (log #18-6-20727) contained allegations as to Defendant Stroma, and that this formal grievance was approved, thereby exhausting his claims against Defendant Stroma. Defendant Stroma carries the burden of proving that Plaintiff failed to exhaust, and she has not carried that burden, especially when she fails to even acknowledge the record evidence that Plaintiff filed at least one

7

formal grievance regarding the April 9, 2018, incident (log #1805-209-029). Further, Defendant Stroma fails to refute Plaintiff's claim that once the formal grievance was successful, he was not required to pursue an appeal. See, e.g., Williams v. Dep't of Corr., 678 F. App'x 877, 881 (11th Cir. 2017) ("Because that informal grievance was addressed and approved, [plaintiff] was not required to submit any further grievances . . . ."); Mohanlal v. Aretino, No. 3:12-cv-1021-J-34JRK, 2016 WL 70592, at *7 (M.D. Fla. Jan. 6, 2016) (finding the plaintiff exhausted available administrative remedies by filing an informal grievance and that informal grievance was approved).

Because Defendant Stroma has failed to carry her burden, the Motion as to exhaustion is denied at this time. If Defendant Stroma is able to obtain a copy of Plaintiff's grievance (log #18-6-20727) or otherwise show by reference to documentation obtained from the FDOC that Plaintiff failed to exhaust, she may file a motion to dismiss based solely on exhaustion by February 21, 2020.

**B. Failure to State a Claim**

With respect to whether a complaint "fails to state a claim on which relief may be granted," § 1915(e)(2)(B)(ii) mirrors the language of Federal Rule of Civil Procedure 12(b)(6), so courts apply the same standard in both contexts. Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997); see also Alba v. Montford, 517 F.3d 1249, 1252 (11th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Labels and conclusions" or "a formulaic recitation of the elements

8

of a cause of action" that amount to "naked assertions" will not do. Id. (quotations, alteration, and citation omitted). Moreover, a complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001) (quotations and citations omitted).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) the defendant deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. Salvato v. Miley, 790 F.3d 1286, 1295 (11th Cir. 2015); Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011) (per curiam) (citation omitted); Richardson v. Johnson, 598 F.3d 734, 737 (11th Cir. 2010) (per curiam) (citations omitted). Additionally, the Eleventh Circuit requires "'an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation' in § 1983 cases." Rodriguez v. Sec'y, Dep't of Corr., 508 F.3d 611, 625 (11th Cir. 2007) (quoting Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986)). Moreover, "conclusory allegations, unwarranted deductions of facts, or legal conclusions masquerading as facts will not prevent dismissal." Rehberger v. Henry Cty., Ga., 577 F. App'x 937, 938 (11th Cir. 2014) (per curiam) (quotations and citation omitted). In the absence of a federal constitutional deprivation or violation of a federal right, a plaintiff cannot sustain a cause of action against a defendant.

Plaintiff is a prisoner; thus, his claim of deliberate indifference to a serious medical need arises under the Eighth Amendment. See Kuhne v. Fla. Dep't of Corr.,

745 F.3d 1091, 1094 (11th Cir. 2014) (citing Estelle v. Gamble, 429 U.S. 97 (1976)). "To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry." Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004) (quoting Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003)). First, the plaintiff must satisfy the objective component by showing that he had a serious medical need. Goebert v. Lee Cty., 510 F.3d 1312, 1326 (11th Cir. 2007).

> "A serious medical need is considered 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Id. (citing Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994)). In either case, "the medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm." Id. (citation and internal quotations marks omitted).

Brown, 387 F.3d at 1351. Next, the plaintiff must satisfy the subjective component, which requires the plaintiff to "allege that the prison official, at a minimum, acted with a state of mind that constituted deliberate indifference." Richardson, 598 F.3d at 737 (describing the three components of deliberate indifference as "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence.") (citing Farrow, 320 F.3d at 1245)).

> In Estelle, the Supreme Court established that "deliberate indifference" entails more than mere negligence. Estelle, 429 U.S. at 106, Farmer, 511 U.S. at 835. The Supreme Court clarified the "deliberate indifference" standard in Farmer by holding that a prison official cannot be found deliberately indifferent under the Eighth Amendment "unless the official <u>knows of</u> and <u>disregards an excessive risk to inmate health or safety</u>; the official must

10

> both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837 (emphasis added). In interpreting Farmer and Estelle, this Court explained in McElligott [v. Foley, 182 F.3d 1248 (11th Cir. 1999),] that "deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." McElligott, 182 F.3d at 1255; Taylor [v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000)] (stating that defendant must have subjective awareness of an "objectively serious need" and that his response must constitute "an objectively insufficient response to that need").

Farrow, 320 F.3d at 1245-46.

Here, Defendant Stroma does not dispute that Plaintiff's injuries presented a serious medical need. She does not dispute that Plaintiff had a concussion; was experiencing "massive swelling to the left side of his jaw and face; deep laceration to inner side bottom lip"; and was suffering jaw, head, and back pain. See Doc. 1 at 7. Instead, Defendant Stroma argues that Plaintiff fails to demonstrate that she was deliberately indifferent to Plaintiff's serious medical need. Doc. 22 at 5-7. First, she asserts that Plaintiff fails to allege that she had subjective knowledge of a substantial risk of any serious harm to Plaintiff. Id. at 6. However, in the Complaint, Plaintiff alleges that he "continuously advised Defendant Stroma that he was in pain and bleeding and that Plaintiff was dizzy but Defendant Stroma refused to do anything for the Plaintiff." Doc. 1 at 6-7. Thus, Plaintiff has adequately pled that Defendant Stroma had subjective knowledge of his serious medical condition.

Defendant Stroma also argues that Plaintiff fails to allege that she disregarded that risk through conduct that was more than negligence. Doc. 22 at 6. She contends

11

that the record demonstrates she provided Plaintiff with adequate medical treatment and that his desire for a different mode of treatment does not amount to deliberate indifference. Id. To support this argument, Defendant Stroma cites to the FDOC's denial of Plaintiff's informal grievance, which provides in relevant part:

> Upon record review, inmate was assessed by nurse and proper paperwork was completed per protocol on 4/9/18. On emergency room record RN documents injuries as follows "1 ½ cm laceration to inner bottom lip on R side noted. Minimal swelling noted. Patient being combative and non-compliant. No other injuries." Therefore, injuries were documented and due to non-compliance and combativeness inmate was removed from medical area. MD notified and no order received.

Doc. 21-1.

In his Complaint, Plaintiff alleges that despite his continuous efforts to advise Defendant Stroma of his pain and need for medical care, Defendant Stroma refused to document his injuries or refer him for treatment. Doc. 1 at 6. Instead, according to Plaintiff, he was simply sent to a cell in k-dorm. Id. at 7. Plaintiff alleges that he was transferred to Hamilton C.I. the next day, April 10, 2018, and Hamilton C.I. officers and nurses immediately noticed Plaintiff's injuries and sent him to medical for evaluation by Nurse Fuller. Id. at 7-11. Plaintiff explains that Nurse Fuller could not find any documentation in Plaintiff's R.M.C. medical file detailing the injuries or confirming if Plaintiff received any treatment for the serious injuries. Id. He states that Nurse Fuller then documented and assessed Plaintiff's injuries, resulting in a doctor ordering that Plaintiff be injected with medication to help reduce the swelling in Plaintiff's jaw. Id. at 7. According to Plaintiff, the inflammation and condition of his

12

jaw was so severe that Hamilton C.I. medical and dental personnel believed it may have been broken. Id. at 8. He alleges that due to the nature of his injuries, he was promptly transferred back to R.M.C. for further medical care. Id. at 8. Once he was back at R.M.C., Plaintiff alleges that it took a day for medical personnel to close the laceration on his lip. Id. Plaintiff contends that it then took weeks for medical and dental personnel at R.M.C. to x-ray him and provide him with further treatment. Id. According to Plaintiff, he could not eat or chew anything for nine days and it took two-and-one-half weeks for the swelling in his jaw to dissipate and for his lip injury to heal. Id.

At this stage, taking Plaintiff's allegations as true, as the Court must, Plaintiff has sufficiently alleged that Defendant Stroma disregarded Plaintiff's need for medical treatment by conduct that is more than negligence. This alleged conduct constitutes deliberate indifference to a serious medical need.

**C. Qualified Immunity**

Defendant Stroma argues that she is entitled to qualified immunity because she was acting within her discretionary authority and Plaintiff fails to sufficiently allege a claim against her. Therefore, according to Defendant Stroma, the individual capacity claim against her should be dismissed with prejudice.

> "The defense of qualified immunity completely protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known." Gonzalez v. Reno, 325 F.3d 1228, 1233 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002)) . . . . Once it has been determined that the official was acting within

> his discretionary duties, the burden shifts to the plaintiff to show (1) that the official violated a constitutional right and (2) that the right was clearly established at the time of the alleged violation. Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1099 (11th Cir. 2014). Our inquiry "can begin with either prong." Morris v. Town of Lexington, 748 F.3d 1316, 1322 (11th Cir. 2014).

Marbury v. Warden, 936 F.3d 1227, 1232-33 (11th Cir. 2019) (internal citations modified). As previously found, Plaintiff has sufficiently alleged that Defendant Stroma violated his Eighth Amendment rights. Deliberate indifference to a serious medical need of a prisoner is a violation of such rights. See Estelle, 429 U.S. at 104 (1976) ("deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment."). Accordingly, Defendant Stroma is not entitled to qualified immunity at the pleading stage.

### D. Eleventh Amendment Immunity

Defendant Stroma argues that Plaintiff's claim for monetary damages against her in her official capacity should be dismissed, because she is entitled to Eleventh Amendment immunity. Doc. 22 at 8-9. However, Plaintiff clearly states that this action is brought against Defendant Stroma in her individual capacity. Doc. 1 at 10. Thus, the Court finds that there is no Eleventh Amendment immunity issue.

Accordingly, it is

**ORDERED:**

1. Defendant Nurse Stroma's Motion to Dismiss Complaint with Prejudice and Incorporated Memorandum of Law (Doc. 22) is **DENIED**.

2. If Defendant Stroma is able to obtain Plaintiff's formal grievance (log #18-6-20727) or other documentation from the FDOC showing Plaintiff failed to exhaust, she may file a motion to dismiss based solely on exhaustion by **February 21, 2020.** Otherwise, Defendant Stroma shall file an answer to the Complaint by **February 21, 2020**.

3. The parties shall serve all discovery requests no later than **March 11, 2020**. A party to whom a discovery request is directed must respond within the time permitted by the Federal Rules of Civil Procedure. Any motions relating to discovery shall be filed by **May 1, 2020**.

4. All motions to dismiss and/or for summary judgment shall be filed by **May 27, 2020**.[2] This deadline is also applicable to the filing of any motions or the raising of any affirmative defenses based on qualified immunity.

5. Responses to any motions to dismiss and/or for summary judgment shall be filed by **July 6, 2020**.

6. The parties are encouraged to discuss the possibility of settlement and notify the Court if their efforts are successful. In doing so, Plaintiff and Defendants are encouraged to maintain a realistic approach in making and/or considering any settlement offers.

---

[2] The Court requires the complete transcript of any deposition submitted as an exhibit.

7. As to the taking of Plaintiff's deposition, if necessary, the Court grants permission to Defendants' counsel. Defendants' counsel must contact the Warden of Plaintiff's institution to arrange an appropriate time and place for the deposition.

**DONE AND ORDERED** at Jacksonville, Florida, this 23rd day of January, 2020.

TIMOTHY J. CORRIGAN
United States District Judge

Jax-7

C: William Isiah Johnson, #P44771
Counsel of Record